CUDAHY, Circuit Judge.
 

 The substantive question in this case involves the right of the appellee, Green Tree Acceptance, Inc. (“Green Tree”), to offset a debt which it claims it owes the bankrupt-appellant, Elcona Homes Corporation (“El-cona”). Because we find that the district court did not have the authority to refer an appeal from a final judgment of a bankruptcy court to a United States magistrate, we do not reach the merits.
 
 [1]
 
 Accordingly, we vacate the judgment and remand with the direction that the district court itself consider the appeal from the bankruptcy court,
 

 I.
 

 The facts of this case were stipulated by the parties in the bankruptcy proceeding. Elcona was a manufacturer of mobile homes with its principal place of business in Elkhart, Indiana; it marketed its products nationally through independent dealers. Green Tree is a commercial financing agency; its principal place of business is in Minneapolis, Minnesota. The dispute in this case revolves around the sale of a mobile home by Monro Homes, Inc. (“Mon-ro”), one of Elcona’s dealers, to Linda Mar-kle, a retail buyer, for $36,700.00. The transaction took place pursuant to the retail proceeds method.
 
 [2]
 
 On July 20, 1983, Green Tree informed Elcona that it would be providing purchase money financing for Markle. Elcona delivered the mobile home ordered by Markle to Monro; Elcona retained title to the home. Markle and Mon-ro entered into an installment sales contract on August 22, 1983, and Monro was granted a security interest in the home to secure payment of the purchase price. On that same day, Monro assigned the sales contract to Green Tree.
 

 On September 8, 1983, Elcona filed a voluntary petition in bankruptcy under chapter 11 of the Bankruptcy Code with
 
 *138
 
 the bankruptcy court for the Northern District of Indiana. 11 U.S.C. § 101
 
 et seq.
 
 (1982). Elcona continued to operate its business as debtor-in-possession until January 1984, at which time it ceased operating its manufacturing facility. On September 26, 1983, Green Tree issued a check to Elcona for $4,062.72. This amount represented the $22,700.00 price charged by El-cona for the Markle mobile home less $18,-637.28 that Green Tree claims represents pre-petition debts owed the financing agency by Elcona and post-petition administrative expenses incurred by Elcona. When Green Tree refused to turn over the entire amount charged by Elcona for the mobile home, Elcona filed a petition with the bankruptcy court to show cause why Green Tree should not be held in contempt for failure to comply with the automatic stay provisions contained in section 362 of the Bankruptcy Code. 11 U.S.C. § 362(a)(7) (1982).
 
 [3]
 
 Green Tree then filed a motion for relief from the stay to allow the setoff. The bankruptcy court held that Green Tree had violated the automatic stay when it offset the debts. The court further found that Green Tree was not entitled to a setoff because the debts lacked mutuality; debts cannot be offset under the Bankruptcy Code unless mutuality of obligation exists. 11 U.S.C. § 553(a) (1982). “Mutuality of obligation simply means that the creditor is indebted to the debtor who likewise owes a debt to the creditor; something must be owed by both sides.”
 
 In re Morristown Lincoln-Mercury, Inc.,
 
 42 B.R. 413, 416 (Bankr.E.D.Tenn.1984) (citation omitted).
 
 See also
 
 4
 
 Collier on Bankruptcy
 
 ¶ 553.-04[1] (15th ed. 1986). The bankruptcy court found that Elcona owed a pre-petition debt to Green Tree but that Monro, and not Green Tree, owed Elcona the manufacturer’s price for the mobile home. The court ordered Green Tree to turn over $16,251.14 to the trustee in bankruptcy.
 
 [4]
 

 Green Tree appealed the bankruptcy court’s decision to the district court for the Northern District of Indiana. With the cons’ent of the parties, the matter was referred to a magistrate under the consensual reference provision of 28 U.S.C. § 636(c)(1) (1982).
 
 [5]
 
 On March 20, 1986, the magistrate entered an order and memorandum opinion reversing the bankruptcy court. While the magistrate agreed with the bankruptcy court that Green Tree had violated the automatic stay, he concluded that the pre-petition debts that existed between Green Tree and Elcona were mutual; thus, Green Tree 'was entitled to offset those debts. Elcona then filed this appeal.
 

 II.
 

 Pursuant to 28 U.S.C. § 636(c)(1) (1982), a magistrate, upon consent of the parties, “may conduct any or all proceedings in a jury or nonjury civil matter ... when specially designated to exercise such jurisdiction by the district court....” A district court’s jurisdiction, including its authority to refer cases to a magistrate, is derived from statute. C. Wright,
 
 The Law of Federal Courts
 
 22 (4th ed. 1983). Parties cannot, by consent, waive the absence of juris
 
 *139
 
 diction.
 
 Id.
 
 at 23. The issue here is whether or not Congress intended that district courts have the power to refer appeals from bankruptcy courts to magistrates. To answer this question, we must consider not only the current bankruptcy court system, which was established in 1984 when Congress enacted the Bankruptcy Amendments and Federal Judgeship Act (the ‘•‘BAFJA”), Pub.L. No. 98-353, 98 Stat. 333, but also the prior bankruptcy court system, which became effective in 1978 with the passage of the Bankruptcy Reform Act (the “BRA”), Pub.L. No. 95-598, 92 Stat. 2549.
 

 Under the BRA, district courts clearly were prohibited from referring appeals from bankruptcy court decisions to magistrates: “A district court may not refer an appeal ... to a magistrate or to a special master.” 28 U.S.C. § 1334(c) (1982).
 
 See In re Morrissey,
 
 717 F.2d 100, 103 (3d Cir.1983) (“Congress has [through § 1334(c)] prohibited a district court from referring a bankruptcy appeal to a magistrate.”).
 

 The Supreme Court’s decision in
 
 Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,
 
 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), raised doubts about the constitutionality of the bankruptcy court system established by the BRA. In response to the
 
 Northern Pipeline
 
 decision, Congress restructured the bankruptcy courts in 1984 through legislation contained in the BAFJA. Congress, however, did not reenact the specific prohibition against referrals of bankruptcy court appeals to magistrates. Green Tree contends that Congress’ deletion of this prohibition implies that the legislature now intends that district courts make such referrals. Appellee’s Brief as to Jurisdiction at 4.
 

 Since the legislative history of the BAF-JA is sparse,
 
 [6]
 
 our interpretation of Congress’ intent is based necessarily on the language and structure of the act. We acknowledge that Congress’ failure to enact a provision comparable to former section 1334(c) does provide some support for Green Tree’s position. However, in light of the elaborate system established by Congress for the appeal of orders of bankruptcy courts, we find that Congress’ failure to provide specifically for the referral of appeals to magistrates is a more telling indication of Congress’ intent. The BAFJA clearly establishes two possible routes of appeal from the orders of bankruptcy courts. Parties can appeal to the district court, 28 U.S.C.A. § 158(a) (West Supp. 1986), or they can appeal to a panel of three bankruptcy judges if three conditions are met: the judicial council of a circuit orders the creation of such a panel; the district court judges for the district authorize the referral of appeals, and the parties to the appeal consent, 28 U.S.C.Á. § 158(b) (West Supp.1986). In view of the careful attention which Congress gave to the complicated appellate process established by the BAFJA, we conclude that if Congress had wanted district courts to have the power to refer appeals to magistrates, Congress would have specifically so provided.
 
 See
 
 1
 
 Collier on Bankruptcy
 
 § 3.03, at 3-138 (15th ed. 1986) (Despite the omission of a section comparable to former section 1334(c), “[i]t is doubtful that Congress intended appeals from bankruptcy judges’ decisions to be referred to special masters or to magistrates.”).
 

 Our decision is also supported by the circumstances surrounding the enactment of the BAFJA. As noted, the BAFJA was Congress’ response to the Supreme Court’s decision in
 
 Northern Pipeline.
 
 The legislative solution to the jurisdictional dilemma posed by
 
 Northern Pipeline
 
 was the strengthening of the judiciary’s control over bankruptcy judges, to make the latter truly adjuncts of the courts.
 
 See generally
 
 28 U.S.C.A. §§ 151, 157, 1334 (West Supp. 1986). The courts’ control over bankruptcy judges would be weakened if appeals lay in
 
 *140
 
 the first instance to another Article I officer, a magistrate.
 

 This conclusion may seem inconsistent, at first blush, with the fact that the BAF-JA does in fact provide for review in some instances by bankruptcy appellate panels, which are composed of bankruptcy judges who, like magistrates, are Article I officers. We find, however, that providing for review by a panel of bankruptcy judges and not by magistrates is logically supportable within the framework of the BAFJA. Congress had provided for bankruptcy appellate panels under the BRA. While Congress continued the use of such panels under the BAFJA, the 1984 act strengthened the courts’ control over them. Under the BRA, appeals from bankruptcy judges went to a panel of three bankruptcy judges if the circuit council of a circuit ordered the creation of such panels under former section 160 of 28 U.S.C. Pursuant to former section 1334(a) of 28 U.S.C., appeals were heard by district courts
 
 only
 
 if such appellate panels were not created.
 
 [7]
 
 By contrast, in order for bankruptcy appellate panels to hear appeals under the BAFJA, not only must the circuit council establish the panels, but the district courts must agree to permit referrals, and the parties must consent. Thus, while Congress has provided specifically for appeal to an Article I body, it has placed a number of obstacles in the way of such appeals, obstacles which seem aimed in part at increasing the control of the circuit courts and the district courts over bankruptcy appellate panels. There is also the obvious point that a panel of bankruptcy judges presumably has an expertise that a magistrate would not generally share. On the other hand, appeal to the district court, a tribunal not necessarily fortified by special expertise, involves the alternative ingredient of review by an Article III judge. Thus, we do not find it anomalous that Congress would provide for appeals to this Article I body and, at the same time, not permit appeals to magistrates.
 

 III.
 

 Since we conclude that the district court did not have the authority to refer the appeal from the bankruptcy court to a magistrate, we vacate the order entered below and remand for consideration of this appeal by the district court itself.
 

 VACATED AND REMANDED.
 

 [1]
 

 . Prior to oral argument, we asked the parties to provide us with additional briefing on this jurisdictional question.
 

 [2]
 

 . The "retail proceeds method” is described in the parties’ stipulation of facts before the bankruptcy court as follows:
 

 Retail Proceeds:
 
 The Dealer obtains an order from a consumer for a mobile home and places the Order with the manufacturer, indicating on the order form that this is a retail proceeds transaction and the name of the financial institution involved. The manufacturer verifies the commitment by the financial institution and then builds the unit and delivers the unit to the dealer. The dealer installs the unit on the consumer’s lot upon its receipt from the manufacturer. The consumer notifies its financial institution that it has the mobile home and the dealer confirms installation. The financial institution then verifies with the manufacturer the balance owed the manufacturer on the invoice. The financial institution pays the manufacturer the manufacturer’s invoice, charging the dealer for the delivered merchandise, the amount owed to the manufacturer on the unit. The financial institution issues a check to the dealer for the remaining portion of the purchase price. The manufacturer retains the certificate of origin until notified of the closing of the loan. The manufacturer sends the certificate of origin to the financing agency and the financing agency issues the check to the manufacturer for its pay off.
 

 Once a month the manufacturer is billed by the financing agency for any seller’s financing points accrued each month for federally guaranteed transactions.
 

 Appellant’s Appendix at 4-5 (footnote omitted).
 

 [3]
 

 . Section 362(a)(7) provides:
 

 (a) Except as provided in subsection (b) of this section, a petition filed under section 301 ... of this title [providing for filing of voluntary bankruptcy petition] ... operates as a stay, applicable to all entities, of—
 

 [[Image here]]
 

 (7) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]
 

 11 U.S.C. § 362(a)(7) (1982).
 

 [4]
 

 . The parties stipulated that $2,386.14 qualifies as an administrative expense which is entitled to be offset; consequently, the amount in controversy concerning the setoff is$16,251.14. Bankruptcy Court Order at 2, No. 83-30782 (Bankr.N. D.Ind. Aug. 16, 1984).
 

 [5]
 

 .Section 636(c)(1) provides, in relevant part, as follows:
 

 (c) Notwithstanding any provision of law to the contrary—
 

 (1) Upon the consent of the parties, a full-time United States magistrate or á part-time United States magistrate who serves as a full-time judicial officer may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves.
 

 28 U.S.C. § 636(c)(1) (1982).
 

 [6]
 

 . No Senate or House report was submitted with this legislation. The House conference report does not contain a joint explanatory statement,
 
 see
 
 H.R.Conf.Rep. No. 882, 98th Cong., 2d Sess. (1984).
 

 [7]
 

 . Appeals could also go directly to courts of appeals under former section 1293(b) of 28 U.S.C. if the parties consented.