In the Matter of EVANGELINE REFINING COMPANY, Debtor.

CONTINENTAL ILLINOIS NATIONAL BANK & TRUST COMPANY OF CHICAGO, Plaintiff–Appellee, Cross–Appellant,

v.

CHARLES N. WOOTEN, LTD. and Charles N. Wooten, Sr., Defendants–Appellants, Cross–Appellees.

No. 88–4661.

United States Court of Appeals, Fifth Circuit.

Dec. 11, 1989.

---

Hamilton J. Chauvin, Jr., Lafayette, La., for defendants-appellants, cross-appellees.

Charles N. Wooten, Lafayette, La., pro se.

Philip K. Jones, Liskow & Lewis, New Orleans, La., for Continental Illinois Nat. Bank & Trust Co.

Before KING, GARWOOD and DAVIS, Circuit Judges.

KING, Circuit Judge:

Both sides appeal from the district court's reduction of the bankruptcy court's grant of fees and expenses to the Trustee and Attorney for the Trustee, raising numerous grounds. 90 B.R. 226 (W.D.La.). We vacate the district court's judgment and remand to the district court with instructions to remand to the bankruptcy court for further findings.

I.

Evangeline Refining Co., Inc. (Evangeline), a refining company with retail outlets, instituted a Chapter 11 bankruptcy proceeding on January 6, 1983. Continental Illinois National Bank & Trust Company of Chicago (Continental) was the principal lender to and secured creditor of Evangeline. Continental filed a motion for the appointment of a trustee. Charles N. Wooten (Wooten or Trustee) was appointed Trustee and his law firm became Attorney for the Trustee. The service stations and refinery owned by Evangeline were sold in November and December of 1983, respectively. Wooten and his firm served as Trustee and Attorney for the Trustee until

January 8, 1987 when the matter was converted to a proceeding under Chapter 7.

Over the four year period of Wooten's administration, he filed three interim fee applications and a final application on behalf of himself as Trustee and separate interim and final applications for his firm as Attorney for the Trustee. The interim applications were initially heard by Bankruptcy Judge Rodney Bernard, Jr. (Judge Bernard). Each of the fee applications was opposed by Continental.

The first applications covered a period from March 14, 1983 through July 31, 1983. Wooten sought $52,575.43 as Trustee—an amount at or near the maximum allowable amount under 11 U.S.C. § 326(a)[1] for the funds disbursed over the time frame of the first application. Additionally, Wooten's firm sought $74,706.25 as Attorney for the Trustee. Wooten also sought $14,452.71 in expenses for the Trustee. The application for Wooten as Trustee did not itemize services actually performed or the amount of time expended by Wooten and was based primarily upon the statutory maximum for funds disbursed, with a brief, general description of tasks performed. The application of Wooten's firm listed hours worked by senior attorneys, senior staff attorneys, paralegals and secretaries over the time frame of the first application. The application also contained descriptions of tasks performed and total time devoted to each project. However, the application did not specify what employee performed which task, or what that employee's position was. Excerpts from that application are provided below:

### ITEMIZED TIME SCHEDULE OF ATTORNEYS FOR TRUSTEE

| DATE | NATURE OF SERVICES PERFORMED | HOURS |
|---|---|---|
| 07–18–83 | Prepared for upcoming depositions and obtained additional documents for use during depositions; supervised copying said documents and marking for exhibits. | 13.00 |
| 07–27–83 | Travel to Houston, Texas for review of records located in storage; telephone call to representative of Fields Energy Resources to be present at opening of storage warehouses (4). | 22.25 |
| 07–28–83 | Continued review and packing of records from storage; compiled report thereof for trustee. | 20.00 |
| 07–29–83 | Continued research of records in Houston, Texas and returned to Lafayette, La., filing report of investigation with trustee. | 20.00 |

* * * *

1. The limitations on compensation of trustees provide:

(a) In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed fifteen percent on the first $1,000 or less, six percent on any amount in excess of $1,000 but not in excess of $3,000, and three percent on any amount in excess of $3,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

(b) In a case under chapter 12 or 13 of this title, the court may not allow compensation for services or reimbursement of expenses of the United States trustee or of a standing trustee appointed under section 586(b) of title 28, but may allow reasonable compensation under section 330 of this title of a trustee appointed under section 1202(a) or 1302(a) of this title for the trustee's services, payable after the trustee renders such services, not to exceed five percent upon all payments under the plan.

(c) If more than one person serves as trustee in the case, the aggregate compensation of such persons for such service may not exceed the maximum compensation prescribed for a single trustee by subsection (a) or (b) of this section, as the case may be.

(d) The court may deny allowance of compensation for services or reimbursement of expenses of the trustee if the trustee failed to make diligent inquiry into facts that would permit denial of allowance under section 328(c) of this title or, with knowledge of such facts, employed a professional person under section 327 of this title.

11 U.S.C. § 326.

SENIOR ATTORNEY – $135.00 per hour
@ 337.50 hours:                                      $45,562.50

SENIOR STAFF ATTORNEY – $125.00 per hour
@ 147.25 hours:                                      $18,406.25

PARALEGALS – $50.00 per hour @ 193.75        9,687.50

EXECUTIVE LEGAL SECRETARY – $50.00 per hour
@ 21.00 hours:                                        1,050.00

                              TOTAL                $74,706.25

The second interim applications covered a period from August 1, 1983 to November 30, 1983. Wooten sought $50,000 as Trustee, $58,477.50 for his firm as Attorney for the Trustee and $7,926.43 in expenses for the Trustee. In the Trustee's application, Wooten alleged that he and his staff had spent 460.75 hours in performance of the Trustee's duties. Wooten submitted an exhibit reflecting time spent by employees on a daily basis for Evangeline projects and a very brief discussion of the tasks performed during the period encompassing the second application. Wooten failed to provide any information as to who performed specific tasks or the time devoted to each task. An excerpt from the Trustee's second interim application is provided below: [2]

Charles N. Wooten, Sr.
Trustee Time Employed
Computer Records

|  | Total Time | Charles N. Wooten | Dan Keefe | Keith Rodrigues | Jim Exner | Julius Lopez | Steve Pierce | Other |
|---|---|---|---|---|---|---|---|---|
| 08/01/83 | 7.00 | 2.00 |  |  | 5.00 |  |  |  |
| 08/02/83 | 6.50 | 5.75 |  |  | 0.75 |  |  |  |
| 08/03/83 | 6.25 | 1.25 |  |  | 5.00 |  |  |  |
| 08/04/83 | 7.75 | 5.25 |  |  | 2.50 |  |  |  |
| 08/05/83 | 2.00 | 2.00 |  |  | 0 |  |  |  |

The second application of the Attorney for the Trustee contained an exhibit similar to that submitted in the first application and a chart of hours similar to that provided by the Trustee in the second application.

Wooten's third interim applications covered a period from December 1, 1983 to December 31, 1984. Wooten requested $50,000 as Trustee, $58,192.50 as Attorney for the Trustee and $22,861.42 in expenses for the Trustee. Wooten attached an exhibit to the Trustee's application providing an itemized breakdown of the hours expended daily in performance of the Trustee's duties by each person following the form of the second application of the Trustee. In addition, the tasks performed on each day were identified by activity, person and length of time devoted to each activity. An excerpt from the Trustee's third application follows:

2. Wooten contends that a narrative of activities was later provided and annexed to the exhibit with affidavit but the clerk's office did not have a narrative in its possession at the time of the final application.

## DETAILED TIME SCHEDULES OF TRUSTEE

| DATE | DESCRIPTION | HOURS |
|---|---|---|
| 12/12/83 | Computed and made payroll for refinery personnel, paid bills, traveled to Jennings to prepare for auction sale and discussion with employees concerning things to accomplish for the sale. (CNW – 3.75 Hrs; JE – 9.50 Hrs) | 13.25 |
| 12/13/83 | Went to refinery and continued preparation for auction, prepared brochure listing of property to be offered at auction sale. (CNW – 1.00 Hr; JE – 9.00 Hrs; RR – 2.00 Hrs) | 12.00 |
| 12/14/83 | Traveled to Jennings, La. for finishing preparations of sale including removal of remaining records to be delivered to Trustee's office. (JE – 5.50 Hrs) | 5.50 |

---

The Attorney for the Trustee's third application followed the form of the Trustee's application.

Judge Bernard granted compensation on the three interim applications as follows:

| APPLICATION | PERIOD | TRUSTEE | ATTORNEY | EXPENSES |
|---|---|---|---|---|
| First | March 14, 1983 – July 31, 1983 | $ 25,000 | $ 53,362.25 | $ 3,262.50 |
| Second | August 1, 1983 – Nov. 30, 1983 | $ 50,000 | $. 51,202.50 | $11,661.42 |
| Third | Dec. 1, 1983 – Dec. 31, 1984 | $ 25,000 | $ 53,073.75 | $ 7,926.43 |
| TOTALS | | $100,000 | $157,638.50 | $22,850.35 |

---

Orders were filed without findings of fact or conclusions of law. The tapes of the proceedings on these interim applications were destroyed after two years according to a practice of the clerk's office and no transcripts of those proceedings were made.

The fourth and final applications of the Trustee and his firm came before Bankruptcy Judge W. Donald Boe (Judge Boe).[3] In these applications, Wooten sought final approval of the interim awards as well as additional compensation of $32,857.54 for Wooten as Trustee and $27,032.50 as Attorney for the Trustee from January 1, 1985 to December 31, 1986. A hearing was held. Wooten's final applications were denied and Judge Boe reduced the awards on the interim applications. Judge Boe read his findings into the record.

Time records were not kept contemporaneously by Wooten. As Judge Boe found, records were compiled as a result of a "post hoc process of going back, sometimes a considerable length of time after the billing event occurred, and attempting to reconstruct them." Often, this reconstruction was not done until Wooten prepared his application—possibly as much as two years after tasks were performed. Time records were occasionally kept on an IBM System Six computer but in most cases "no notations of time were maintained at all" and those time records that were kept were admittedly "totally incomplete." In the usual case where no time entries were available, Wooten would "assess the time as to what [he] thought was reasonable." Primary sources of hours for Wooten and his firm were records of Monday mornings meetings, files, letters and pleadings. Judge Boe found that "after getting the System Six [time] reports together, the results of the Monday morning agenda, going

---

3. Judge Bernard having retired, the matter was    transferred to his successor, Judge Boe.

through files and looking at letters and pleadings, [Wooten] would then assess the time as to what he thought was reasonable." Judge Boe concluded that Wooten's applications were "essentially estimates."

During the course of Wooten's work for Evangeline, Wooten was also trustee in 250 to 300 Chapter 7 cases, standing Chapter 13 trustee for the Lake Charles and Lafayette–Opelousas Divisions of the Western District of Louisiana and served in what Judge Boe termed "a number of fairly large Chapter 11 cases." Judge Boe noted that these Chapter 11 cases appeared to be "far more significant" than the Evangeline case. Continental was able to locate fee applications in only nine cases. Yet on these cases alone (plus Evangeline), Wooten claimed that he worked an average of 10 to 11.25 hours a day for each calendar day from May through July of 1984. Judge Boe concluded that based upon a comparison with other cases whose hours were known, "the appearance of high mileage and high hourage days is far more than would be reasonable or could be reasonably anticipated or believed." In addition, Wooten's claimed hours on these ten cases resulted in six days in which he personally billed *over* twenty-four hours a day. Wooten claimed these impossible results were explained by secretarial errors, but Judge Boe specifically rejected Wooten's explanation concluding that, in relation to Wooten's other cases:

It's not reasonable to believe that these types of hours can be put in on what is less than the full responsibilities of Mr. Wooten. I'm referring now to the fact that as mentioned earlier these cases did not exhaust the total gamut of cases for which he had responsibility. And recording the right hours on the wrong day does not explain some of these situations where I see high billing day after day after day, even if it was recorded on the wrong day. The theory that the dictation was done or the writing was done on one day and typed and recorded as being billed on some other day just doesn't hold up under these kinds of—these types of hours.

The three interim applications presented to Judge Boe for final approval listed time expended by attorneys and other "paralegals" on Evangeline projects. Judge Boe found that "a number of people in Wooten's firm who had been billed as paralegals ... are in fact secretaries." Beyond the four secretaries billed as paralegals, a pilot and bookkeeper/accountant were also being billed out as "paralegals" under 11 U.S.C. § 330.[4]

Dan Keefe (Keefe), who formerly served as an attorney in Wooten's firm, was called by Continental. Keefe stated that he had maintained records for the time he worked and had produced monthly summaries on his computer. These records revealed the following summary:[5]

---

**4.** Section 330, relating to the compensation of officers provides:

(a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—

(1) *reasonable* compensation for *actual, necessary* services rendered by such *trustee,* examiner, *professional person,* or *attorney,* as the case may be, and by any *paraprofessional persons* employed by such trustee, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses.

(b) There shall be paid from the filing fee in a case under chapter 7 of this title $45 to the trustee serving in such case, after such trustee's services are rendered.

(c) Unless the court orders otherwise, in a case under chapter 12 or 13 of this title the compensation paid to the trustee serving in the case shall not be less than $5 per month from any distribution under the plan during the administration of the plan.

(d) In a case in which the United States trustee serves as trustee, the compensation of the trustee under this section shall be paid to the clerk of the bankruptcy court and deposited by the clerk into the United States Trustee System Fund established by section 589a of title 28.

11 U.S.C. § 330 (emphasis added).

**5.** The records themselves were put under seal by Judge Boe.

| Applications | Alleged Hours (Wooten Application) | Alleged Hours (Keefe Testimony) |
|---|---|---|
| First | 147.00 | 17.25 |
| Second | 98.00 | –0– |
| Third | 194.05 | 24.00 |
| | 439.05 | 41.25 |

In total, Keefe testified that he actually worked only 41.25 hours of the 439.05 hours billed for him by Wooten. Not only did Keefe claim that he had not done much of the work credited to him, but Keefe stated that many of the people with whom he had purportedly worked, he had, in fact, never met. Finally, Keefe testified that he was billed at $100 an hour rather than the $125 an hour represented by Wooten. Contradictory testimony was given by witnesses for Wooten. Judge Boe determined that he could not "accept the facts precisely the way [Keefe] portray[ed] [them]," but he explicitly refused to discredit Keefe as a witness.

In assessing the evidence presented, Judge Boe concluded that "what [were] essentially estimates of time spent provided in the various interim and final applications in this proceeding have less than full probative value." He found that Wooten "engaged in consistent overbilling" and "excessive billing in terms of hours" and characterized this overbilling as "systematic." In light of Wooten's persistent overbilling, Judge Boe determined that "something needs to be paid back, even though in percentage terms it is a small amount."

Judge Boe denied the final application and ordered Wooten as Trustee and his firm as Attorney for the Trustee to return $10,000 each to the estate by reducing the interim awards previously paid.

The matter was appealed to the district court. The district court referred the matter to the magistrate but then recalled the reference and treated the case "as an appeal of first impression." The district court essentially agreed with most of Judge Boe's conclusions, but found that Judge Boe had "arbitrar[ily]" reduced the awards by $20,000 and that this reduction was not "substantial" enough. The district court, in turn, reduced each award by 50%. Thus, the Trustee's award was reduced to $50,000 and the award for the Attorney to the Trustee was reduced to $78,819.25.

Both sides have appealed the action taken by the district court with respect to the three interim fee applications on numerous grounds. We note that, with the same fee applications before the courts addressing the interim awards, each court granted compensation which varied substantially from that granted by all other courts, as summarized below:

### Awards on Interim Fee Applications

| | Trustee | Attorneys |
|---|---|---|
| Fee Application Request | $128,142.97 | $191,376.25 |
| Bankruptcy Judge Bernard | $100,000.00 | $157,638.50 |
| Bankruptcy Judge Boe | $ 90,000.00 | $147,638.50 |
| District Judge Veron | $ 50,000.00 | $ 78,819.25 |

Today we are called upon to consider several issues—including the consequences of intentional overbilling, the documentation requirements for fee applications and the demands for accuracy in fee applications. We must also consider a number of other issues raised by the parties and we begin with those.

## II.

Wooten contends that the district court improperly relied on the magistrate's re-

port and recommendation and effectively allowed the magistrate to become an appellate court for a bankruptcy appeal. We disagree—finding that the district court exercised independent judgment on the appeal from Judge Boe's ruling.

After Judge Boe's decision was appealed to the district court, District Judge Veron referred the case to Magistrate Trimble for a report and recommendation without the consent of the parties. A hearing was held and the magistrate issued a report. The parties filed written objections and Wooten moved to strike the report. The district court recalled the reference to the magistrate saying that he would "now decide this appeal as an appeal of first impression." However, according to Wooten, the district court relied upon and parroted the magistrate's report. Continental disagrees and maintains that the district court exercised its independent judgment.

In *Minerex Erdoel, Inc. v. Sina, Inc.,* 838 F.2d 781, 786 (5th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 57, 102 L.Ed.2d 35 (1988), we examined the intricate scheme for bankruptcy appeals and determined that it did not allow bankruptcy appeals laid at the district court's door to be referred to a magistrate. *Accord Matter of Elcona Homes Corp.,* 810 F.2d 136 (7th Cir.1987). Wooten contends that the district court evaded our holding in *Minerex* by referring to the magistrate and then recalling the reference but parroting the magistrate's report and recommendation. Were the facts as Wooten represents them to be, we might agree. However, the district court recalled the reference to the magistrate explicitly to comply with *Minerex.* The district court exercised its independent judgment and, in fact, reached a different conclusion from that of the magistrate on the amount of compensation that should be awarded to the Trustee and his counsel. Thus, we conclude that the district court corrected its improper reference to the magistrate and complied with *Minerex.*

## III.

Wooten next argues that the bankruptcy judge improperly quashed the subpoena for an attorney for Continental and then erred in failing to invoke the adverse witness rule when Continental failed to call the attorney as a witness. The district court rejected both of Wooten's contentions.

Lead counsel for Continental through at least part of the Evangeline bankruptcy case was Ed Gay (Gay). Gay monitored the activities of Wooten and periodically met with him about the Evangeline bankruptcy proceedings. On the first day of the hearing on Wooten's final fee application, Continental called Keefe and Keefe cast doubt on the accuracy of Wooten's time figures. A continuance was granted and Wooten attempted to depose Gay. Wooten sought to use Gay to impeach Keefe and corroborate Wooten's story by establishing that Gay had met with Keefe on certain occasions regarding the Evangeline bankruptcy case in contradiction with Keefe's testimony.[6] Wooten planned to do this by questioning Gay on his billing on the Evangeline case and the days on which that billing occurred. Judge Boe ordered Gay to produce his billing records on Evangeline projects for the relevant time period but quashed Gay's subpoena because the information sought was of limited relevance and largely cumulative in light of his order to produce and other evidence. Moreover, he reasoned that Wooten's request was overbroad. Gay was never called to testify by Continental (or Wooten).

■■ We first address the quashing of Gay's subpoena. In the discovery context, the trial judge is afforded wide latitude. *Mayo v. Tri–Bell Indus.,* 787 F.2d 1007, 1012 (5th Cir.1986) ("control of discovery is committed to the sound discretion of the trial court"). As such, the trial court's decision regarding the taking of a deposition is subject to an abuse of discretion standard. *Salter v. Upjohn Co.,* 593 F.2d

---

**6.** Wooten also sought to use Gay to establish that Gay's firm, Liskow & Lewis, worked hours similar to those of Wooten's firm—apparently to bolster Wooten's claims of high hours on Evangeline and other cases.

649, 652 (5th Cir.1979). Here the deposition sought was of limited probative value and largely cumulative. Thus, we conclude that Judge Boe did not abuse his discretion in quashing Gay's subpoena.

■■■ Next we turn to Judge Boe's failure to invoke the adverse witness rule. Under the adverse witness rule, a party's failure to call a witness under its control who could testify to material facts permits the court to draw an adverse inference against the party in control of the witness. II J. Chadbourn, *Wigmore on Evidence* § 285 (1979 & Supp.1989). The rule is discretionary and subject to an abuse of discretion standard. *Wilcox v. Kerr–McGee Corp.*, 706 F.Supp. 1258, 1266 (E.D.La. 1989). Because Gay's testimony was relatively unimportant and largely cumulative, we cannot say that Judge Boe abused his discretion by failing to draw an adverse inference from Gay's failure to testify. II J. Chadbourn, *Wigmore on Evidence* § 287 (If a witness testimony is "comparatively *unimportant,* or *cumulative,* or *inferior* to what is already utilized" the adverse witness rule should not be invoked.) (emphasis in original).

## IV.

Wooten next challenges Judge Boe's review of Judge Bernard's interim fee awards and raises three separate attacks. First, Wooten contends that although interim awards are interlocutory and subject to limited review, Judge Boe substituted his judgment for that of Judge Bernard and stepped beyond the review powers he possessed. Next, Wooten contends that Judge Bernard's decision on the interim fee awards constituted the "law of the case." Finally, Wooten maintains that Judge Boe failed to invoke a presumption of regularity as to Judge Bernard's awards when Continental failed to supply a complete record of the earlier proceedings before Judge Bernard. The district court rejected each of Wooten's arguments.

Judge Bernard heard the first three interim fee applications and granted an award on each of these. Then, on the final application for fees, Judge Boe held a hearing on final approval of the interim awards and the propriety of a final award. Testimony included evidence from one of Wooten's employees (Keefe) casting doubt on Wooten's fee applications, as well as other evidence. Judge Boe found that "interim awards are interlocutory, and as such are always subject to reexamination and adjustment during the course of the case." Judge Boe then reduced Judge Bernard's interim awards. We address each of Wooten's challenges to Judge Boe's review of Judge Bernard's fee awards in turn.

■■ The Bankruptcy Code specifically provides for the award of interim compensation. 11 U.S.C. § 331. The purpose of interim compensation is to alleviate economic hardships that would otherwise visit court appointed officers committed to finance extended engagements. 2 *Collier on Bankruptcy* ¶ 331.01 (15th ed.). Because interim awards are interlocutory and often require future adjustments, they are "*always* subject to the court's reexamination and adjustment during the course of the case...." 2 *Collier on Bankruptcy* ¶ 331.03 (15th ed.) (emphasis added); *see also In re Stable Mews Assoc.*, 778 F.2d 121, 123 n. 3 (2d Cir.1985) ("Interim awards are, by definition, not final."); *In re Callister*, 673 F.2d 305, 307 (10th Cir.1982) ("Interim awards ... are in no respect final adjudications on the question of compensation. Such awards are therefore interlocutory."). We disagree with Wooten's contention that interim fee awards are only subject to limited review. Clearly, interim awards are subject to final adjustments and, as such, fully reviewable.

■■■ We next turn to Wooten's contention regarding the law of the case doctrine. The law of the case doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Browning v. Navarro*, 887 F.2d 553, 556 (5th Cir.1989) (*citing Messenger v. Anderson*, 225 U.S. 436, 443, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912)). The doctrine is discretionary and not an inexorable command that rigidly

binds a court.[7] As Wright, Miller and Cooper emphasize, for the law of the case doctrine to apply, "only a 'final ruling' will do...." 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4478 (1981 & Supp.1989). Finality in this sense does not refer to technical concepts of finality but rather is a functional finality which "seeks to identify a determination intended to put a matter to rest." *Id.* Interim fee awards are not final determinations intended to put a matter to rest. Rather, they are interlocutory and reviewable, and are intended only to provide some interim relief from the economic hardships of subsidizing litigation. Thus, we conclude that the law of the case doctrine does not apply to interim fee awards and Judge Boe was not obligated to apply the doctrine when reviewing Judge Bernard's interim awards. *Accord In re Kendavis Indus. Int'l*, 91 B.R. 742, 746–47 (Bankr.N.D.Tex. 1988) (rejecting the law of the case doctrine for interim fee awards).

■ In Wooten's final contention with respect to Judge Boe's review of Judge Bernard's interim fee awards, he contends that Continental's failure to prompt Judge Bernard to provide a record of the reasons for his interim fee awards gives rise to a presumption of correctness with respect to Judge Bernard's awards. Where an appellant fails to provide an adequate appellate record on an issue finally decided by a prior court, that failure makes his road to victory difficult at best. *See Davis v. City of Abbeville*, 633 F.2d 1161, 1164 (5th Cir. 1981) (lack of recorded transcript and failure of appellant to prepare a statement of proceedings under Fed.R.App.Proc. 10(c) resulted in a decision of no remand for articulation of *Johnson* factors on fee application); *In re Boteiho*, 8 B.R. 305 (Bankr. 1st Cir.1980) (it is sometimes incumbent upon a party planning to appeal to request the findings that provide the basis for a "bare" order on a fee application, and failure to do so may result in dismissal of an appeal). Judge Bernard's fee awards

were not "appealed" to Judge Boe. Rather, they were presented to Judge Boe for review and final approval—which included complete consideration of the propriety of the preliminary awards. While Judge Boe might have benefited from Judge Bernard's insight through findings of fact and conclusions of law, Continental's failure to request findings from Judge Bernard was not improper and it was certainly not an abuse of discretion for Judge Boe to refrain from drawing an adverse inference from their absence. Thus, we hold that Judge Boe committed no error in reviewing Judge Bernard's interim fee awards.

## V.

■ On cross-appeal from the award of any compensation to Wooten in his capacity as Trustee and Attorney for the Trustee, Continental contends that Wooten committed misconduct by intentionally filing false interim fee applications and, as a result, should be denied all compensation. In reviewing this contention, the bankruptcy court's fact findings in relation to misconduct are subject to clearly erroneous review under Bankruptcy Rule 8013, while the ultimate award of compensation is governed by an abuse of discretion standard. *See Matter of U.S. Golf Corp.*, 639 F.2d 1197, 1201 (5th Cir.1981).

Continental maintains that Wooten engaged in flagrant misconduct by intentionally falsifying the hours worked in his fee applications—violating his fiduciary duties to the court and to the estate. Continental reads the opinions of Judge Boe and the district court as indicating that such misconduct was found, and contends that it was an abuse of discretion to award fees in light of that misconduct. Wooten agrees with Continental that deliberate fraud in the submission of fee applications warrants denial of all compensation. However, Wooten maintains that Judge Boe made no finding of "deliberate fraud" in the submission

---

7. Even where the law of the case doctrine applies, the doctrine has exceptions for new evidence, changes of law, clearly erroneous prior decisions and manifest injustice. *United States*

*v. McClain*, 593 F.2d 658, 664–65 (5th Cir.), *cert. denied*, 444 U.S. 918, 100 S.Ct. 234, 62 L.Ed.2d 173 (1979).

of fee applications and that, in fact, no misconduct occurred.

Bankruptcy Judge Boe, in his findings of fact and conclusions of law, found that Wooten engaged in overbilling, and characterized the overbilling as "consistent" and "systematic." Judge Boe also found that in light of the large number of cases upon which Wooten served as trustee or counsel (including a number of Chapter 11 cases larger than the Evangeline case), Wooten's claimed hours on Evangeline could not be "reasonably anticipated or believed." Moreover, Judge Boe rejected any claim of negligence in data entry as to those days where Wooten personally claimed over twenty-four hours a day on Evangeline and the other cases for which Wooten's hours were known. Finally, Judge Boe refused to discredit Keefe, although he apparently did not fully credit his testimony. Keefe testified that he worked only 41 of the 439 hours claimed by Wooten. In construing Judge Boe's opinion, the district court stated:

The evidence in this case overwhelmingly reflects that there are great discrepancies both in the amounts charged by Wooten for the services of his employees, and for the number of billable hours which were credited to his firm for the work that was allegedly performed.... In addition, there is overwhelming evidence that the amount of hours billed in a single day were inaccurate, as evidenced by the fact that more than 24 hours were sometimes billed for tasks performed in a single day.

We first examine the law in relation to the filing of fraudulent fee applications, i.e., fee applications containing misrepresentations of fact made with knowledge of their falsity and intent to deceive, and then turn to the findings of misconduct made in this case.

The charge of submission of fraudulent fee applications is a "wholesale objection" to a fee award which calls into question the professional integrity of the applicant. Bernstein & King, *Collier Bankruptcy Compensation Guide* ¶ 4.08 (1989). The Supreme Court has emphasized that claims for fees and costs must not be "excessive," and must, in all respects, be "fairly and honestly made." *Hensley v. Eckerhart*, 461 U.S. 424, 433–34, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1982); *Trustees v. Greenough*, 105 U.S. 527, 537, 26 L.Ed. 1157 (1881). Moreover, we have warned counsel not to venture into "any possible abuses of compensation." *Matter of Consol. Bancshares*, 785 F.2d 1249, 1255 (5th Cir.1986) (conflict of interest). When persons perform duties in the administration of the bankruptcy estate, they act as "officers of the court" and not private persons. *Callaghan v. Reconstruction Fin. Corp.*, 297 U.S. 464, 468, 56 S.Ct. 519, 521, 80 L.Ed. 804 (1935); *York Int'l Bldg. v. Chaney*, 527 F.2d 1061, 1068 (9th Cir.1975). As such, trustees and attorneys for trustees are held to high fiduciary standards of conduct. *Matter of Consol. Bancshares*, 785 F.2d at 1255.

The filing of a fraudulent fee application by a trustee or attorney for the trustee is a flagrant violation of the obligation of candor to the court and fiduciary obligations to the estate.[8] Where a trustee or attorney for the trustee misrepresents facts to the court with knowledge of their falsity and intent to deceive,[9] courts have repeatedly denied compensation. *See, e.g., Matter of Futuronics Corp.*, 655 F.2d 463, 470–71 (2d Cir.1981), *cert. denied*, 455 U.S. 941, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982); *In re Endeco Inc.*, 675 F.2d 166, 167 (8th Cir.1982); *Matter of Arlan's Dept. Store*, 615 F.2d 925, 943–44 (2d Cir.1979); *In re Devers*, 33 B.R. 793, 799 (D.D.C.), *aff'd without opinion*, 729 F.2d 863 (D.C.Cir. 1983). Because fraud on the court and

---

8. Such conduct is a violation of ethical obligations as well. Disciplinary Rule 1–102(A)(4) states that misconduct occurs where counsel engages "in conduct involving dishonesty, fraud, deceit, or misrepresentation." ABA Code of Prof. Resp., DR 1–102(A)(4).

9. We need not decide here whether an immaterial misrepresentation warrants denial of all compensation. The misrepresentations allegedly made here, if proven, were clearly material both in relation to the size of fees sought and the size of the fees ultimately awarded.

estate is misconduct of the highest order, courts have denied all compensation despite benefits to the estate. *See, e.g., Matter of Futuronics Corp.*, 655 F.2d at 471; *In re Endeco*, 675 F.2d at 167.[10]

In *Matter of Futuronics*, general counsel for the debtor-in-possession in a Chapter 11 proceeding had filed an application for retention of special counsel which was denied because of an apparent fee-splitting arrangement. One month later, the two firms involved "deviously deleted the unseemly portions from the application, covertly agreed to maintain the [fee-splitting] agreement in any event, and resubmitted their proposed order devoid of any reference to their prior attempt or their continued illicit contract." *Matter of Futuronics*, 655 F.2d at 470. The bankruptcy judge later learned of the clandestine fee sharing arrangement, but determined that some compensation should be awarded despite the misconduct. *Id.* at 468. On appeal, the district court found that the bankruptcy judge had abused his discretion by awarding *any* fees. *Id.* The district court found that counsel had "intentionally kept the court in the dark" and that counsels' actions were "totally unprofessional and in breach of their respective duties as fiduciaries and officers of the court." *Id.* Under such circumstances, the district court concluded that "a Judge would indeed be remiss if he were to permit a firm guilty of such conduct to be compensated." *Id.* The Second Circuit affirmed, finding that the "flagrant breach of fiduciary obligations to the bankruptcy court ... warranted no less than a total denial of compensation." [11] *Id.* at 470. In reaching its conclusion, the court rejected counsels' con-

tention that its false statements to the court should be overlooked because the efforts of counsel benefitted the estate. The court found that the "potential danger" of illicit conduct makes it "obnoxious" and refused to countenance counsels' assertions. *Id.* at 471.

Fraudulent statements to the court regarding a fee arrangement also resulted in denial of compensation in *Matter of Arlan's Department Stores*, 615 F.2d at 943. There, general counsel for the debtor-in-possession in a Chapter 11 proceeding filed false affidavits asserting that it had never represented the debtor, and intentionally failed to disclose to the court certain fee arrangements as required by the Bankruptcy Rules. *Id.* at 929–36. Compensation was denied by the district court, and the court of appeals affirmed. The Second Circuit characterized counsels' actions as a "serious breach[ ] of fiduciary obligations" that demonstrated a "callous disregard of professional obligations...." *Id.* at 943. In light of counsels' fraudulent statements, the court found no abuse of discretion in the district court's denial of all compensation and concluded that a judge "would have been remiss had he failed to find otherwise." *Id.* at 944.

■ Numerous other cases have held that where a trustee or attorney for the trustee makes fraudulent statements in the course of seeking an award, all compensation should be denied. *In re Devers*, 33 B.R. at 799 (failure to disclose prior compensation to bankruptcy court—"breach of duty warrants the severe penalty of denial of all compensation ... irrespective of whether any actual harm may have result-

---

10. In *Weil v. Neary*, 278 U.S. 160, 49 S.Ct. 144, 73 L.Ed. 243 (1928), attorneys for the trustees in bankruptcy entered into a fee-sharing contract with attorneys for the creditors. *Id.* at 167–71, 49 S.Ct. at 147–49. The court held that even in the "absence of any finding or showing of actual fraud," the contract was illegal and unenforceable. *Id.* at 173, 49 S.Ct. at 149. Again, in *Woods v. City Bank Co.*, 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820 (1940), both counsel and the trustee were subject to conflicting interests. The court held that " 'reasonable compensation for services rendered' necessarily implies loyal and disin-

terested service" and "[w]here a claimant ... was serving more than one master ... he should be denied compensation" even though no "fraud" was shown. *Weil* and *Woods* both indicate that where fraud *is* shown, all compensation should be denied.

11. The court also found that counsels' actions violated then Bankruptcy Rules 215 and 219—providing another basis for denial of compensation. *Id.* at 468–70.

ed"); *In re Endeco Inc.*, 675 F.2d at 167 (trustee's embezzling funds—all compensation denied despite benefits to estate); *In re Pigs are Beautiful*, 72 B.R. 874, 878–79 (Bankr.N.D.Ohio 1987) (trustee's manipulation of dates on checks and making of false statements to court so that he might receive payment while concurrently obstructing disposition of creditors' funds— forfeiture of compensation is appropriate sanction); *In re Barry Yao Co.*, 175 F.Supp. 726, 730 (S.D.Calif.1960), *rev'd on other grounds*, 286 F.2d 299, 302 (9th Cir. 1961) (misrepresentation of "value and extent of services rendered" in fee application necessitates a denial of all compensation). When a trustee or attorney for the trustee intentionally misrepresents facts to the court in a fee application or in related proceedings, a mere reduction in fees would clearly be an inadequate deterrent. At least where such misrepresentations are serious or substantial, all compensation should be denied.

■■■ Judge Boe's findings of consistent and systematic overbilling, and unrealistic hours charged by Wooten in light of his other cases, could be read to suggest that Wooten intentionally falsified fee applications. Moreover, Judge Boe's rejection of Wooten's claim of negligence in data entry and his refusal to discredit the testimony of Keefe, which seriously conflicted with Wooten's time records, also imply a finding of misconduct. Finally, because Wooten originally presented the fee applications to Judge Bernard without noting that they were essentially estimates, and because the overbilling by Wooten only fully came out on cross-examination by Continental, one could infer that Wooten sought to deceive

the court and the estate into accepting intentionally overbilled fee applications. However, such weighty conclusions should not be lightly implied given the inevitable repercussions to the professional reputation and integrity of those involved. Indeed, Judge Boe's findings could be understood to mean that the overbilling that occurred spawned from innocent inaccuracies in the post hoc reconstruction of time records. Thus, we must remand to the district court with instructions to remand to the bankruptcy court for a determination of whether Wooten made misrepresentations in his fee applications or in the related proceedings with knowledge of their falsity and intent to deceive. If so, all fees should be denied.

## VI.

■■■ Finally, we turn to Continental's argument that Wooten failed to satisfy his burden of proof by providing sufficiently detailed and accurate fee applications for the bankruptcy court to exercise independent judgment as to what level of fees were actual, necessary and reasonable.[12] Since bankruptcy judges have discretion in determining attorney and trustee's fees, we will reverse a determination of fees only upon abuse of discretion. *Matter of U.S. Golf Corp.*, 639 F.2d at 1201. An abuse of discretion arises where (1) the bankruptcy judge fails to apply the proper legal standard or follows improper procedures in determining the fee award, or (2) bases an award on findings of fact that are clearly erroneous. *Id.* Essentially, Continental argues that Wooten's fee applications were so wholly lacking in detail and accuracy that he failed to satisfy

---

**12.** An important issue in fee application cases is the twelve factors a judge should consider when awarding compensation enunciated in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir.1974). Wooten asks us to overrule *Johnson*. We decline Wooten's invitation and, of course, are powerless to reverse a prior panel's opinion absent supervening statute or Supreme Court decision. *Affholder Inc. v. Southern Rock Inc.*, 746 F.2d 305, 311 (5th Cir.1984). While the Supreme Court noted in *Hensley* that some

factors in *Johnson* "are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate," the Court in no way denied the utility of the *Johnson* analysis. *Hensley*, 461 U.S. at 434 n. 9, 103 S.Ct. at 1940 n. 9. The *Johnson* analysis was applied to bankruptcy proceedings in *In re First Colonial Corp. of America*, 544 F.2d 1291 (5th Cir.), *cert. denied*, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977).

his burden of proof. Continental concludes that it was an abuse of discretion to award compensation to an applicant who failed to provide sufficiently accurate and detailed time records for meaningful independent review.

■ The applicant bears the burden of proof in a fee application case. *Matter of U.S. Gulf Corp.*, 639 F.2d at 1207. The reviewing court should not venture guesses nor undertake extensive investigation to justify a fee for an attorney or trustee who has not done so himself. It is not an overly burdensome task to enlighten the court as to the work undertaken. Moreover, since every dollar received by the applicant results in one dollar less for creditors, justification for compensation is a necessity. *In re Hotel Assoc.*, 15 B.R. 487, 488 (Bankr.E. D.Pa.1981). This burden was recently re-emphasized in *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939 ("The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed.").

■ Bankruptcy Rule 2016 requires that a trustee or attorney for the trustee who seeks interim or final compensation for services or reimbursement of expenses "shall" provide "a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." [13] Although Bankruptcy Rule 2016 requires a "detailed statement," we have held that fee applications failing to reach an "ideal level of completeness" may suffice. *See Matter of Lawler*, 807 F.2d 1207, 1212 (5th Cir.1987). However, an application must be sufficiently detailed and accurate that, in conjunction with any proceeding in connection therewith and the record in the case, a court can make an independent evaluation as to what level of fees are actual, necessary and reasonable. *Id.* In *Matter of Lawler*, applications showed the amount of time devoted to the "case" by each individual involved and established that the charges were not duplicative. *Id.* While the contents of the applications were not clear, the bankruptcy judge did state that they provided sufficient detail in conjunction with the record and proceedings in the case, to inform the court "as to the extent and quality of the applicants' services." *In re Lawler*, 47 B.R. 673, 676 (Bankr.N.D.Tex.1985). Given the bankruptcy judge's conclusion as to the sufficiency of the application, the court held that while the time sheets did not reach the "ideal level of completeness," they were "sufficiently detailed to allow the bankruptcy court to make an independent evaluation of whether the hours claimed are justified." *Matter of Lawler*, 807 F.2d at 1212.

■ Additionally, where the trustee also serves as attorney, courts must pay special attention and time records should distinguish with reasonable specificity the legal services for which compensation is claimed as an attorney from the administrative tasks of the trustee. *In re Orbit Liquor Store*, 439 F.2d 1351, 1354 (5th Cir.1971); [14] *Matter of Santoro Excavating*, 56 B.R. 546, 549 (Bankr.S.D.N.Y.1986); *see also* H. Newberg, *Attorney Fee Awards* 417 (1986 & Supp.1989). The problem is especially acute because the trustee's compensation is subject to statutory maximums under 11 U.S.C. § 326, and trustees may attempt to evade the limits imposed upon their compensation by allocating trustee work to attorney work in a

---

**13.** Wooten contends that the detail requirements for fee applications should not be applied retroactively to him. We reject this contention. The bankruptcy rules and case authority regarding fee applications have long been in place.

**14.** The trustee in *In re Orbit Liquor Store* also served as attorney. The trustee claimed his statutory maximum fee and the creditors claimed that much of the work charged to attorney's fees was duplicative, and trustee work

rather than attorney work. The court recognized that a "serious problem" exists when "one person acts as trustee and attorney and fails to distinguish in his claim for fees those tasks that are properly the tasks of an attorney." *In re Orbit Liquor Store*, 439 F.2d at 1354. The court remanded in part so that the trustee's activities could be distinguished from those of the attorney. *Id.* at 1355.

fee application. *See, e.g., In re Prairie Cent. Ry.*, 87 B.R. 952, 959–60 (Bankr.N.D. Ill.1988). Moreover, inherent dangers of duplicative charging by the attorney and trustee for the same work are present. *See In re Hudson Shipbuilders*, 794 F.2d 1051, 1058–59 (5th Cir.1986); *Matter of Bar-B-Que Management Assoc.*, 82 B.R. 152, 153–54 (Bankr.M.D.Fla.1988).

■■■■ As for the time at which records are compiled, we have specifically rejected the requirement of other circuits that time records be contemporaneously maintained,[15] although we have admonished that "prudent counsel will adhere to that procedure."[16] *Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1094–95 (5th Cir.1982). While time records need not be contemporaneously maintained, we have emphasized that they should be "accurate." *See In re Orbit Liquor Store*, 439 F.2d at 1354. Reconstructed records are inherently less accurate and rely on memories that fade and documents that disappear or are destroyed. *See, e.g., Cohen & Thiros, P.C. v. Keen Enter.*, 44 B.R. 570, 573–74 (N.D. Ind.1984) (files were turned over to another attorney and time sheets were destroyed—held, reconstructed time records "naturally less credible"). The farther back in time applicants must travel to reconstruct past events, the less credible reconstructed records become.[17] While a lack of contemporaneous record keeping does not per se result in a denial of fees, where reconstructed records become a mere guess by the applicant, it is difficult, if not impossible, for a reviewing court to make an independent evaluation as to what fees are actual, necessary and reasonable based upon a record sufficiently detailed and accurate to support that evaluation.[18] The harsh sanction of total denial of compensation is a rare one. However, a court should only award fees *to the level* that has been proven to be actual, necessary and reasonable.[19] Any lesser requirement would make the applicant's burden of proof a mere shell.

We have recognized that, in the context of fee awards, "the lower court 'has a far better means of knowing what is just and reasonable than the appellate court can have.'" *In re Hudson Shipbuilders*, 794 F.2d at 1058 (*citing, Greenough*, 105 U.S. at 537).[20] While the lower courts have a "superior understanding" with respect to fee awards, they must provide a "clear explanation of the reasons for the fee award." *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941; *Matter of U.S. Golf Corp.*, 639 F.2d at 1202. If a court awards fees

---

15. An overview of the circuits' varying approaches to the contemporaneous records requirement is presented in H. Newberg, *Attorney Fee Awards* 160–61 n. 169 (1986 & Supp.1989).

16. Wooten maintains that Judge Boe and the district court applied the contemporaneous records rule. This contention is wholly without merit. Both judges considered the relevant Fifth Circuit case law regarding the contemporaneous records requirement. Moreover, had those courts applied the contemporaneous records requirement of other circuits, Wooten's claims for compensation would have been denied virtually in full.

17. "Even those courts that accept reconstructed ... time records will analyze those records more carefully...." 2 M. Derfner & A. Wolf, *Court Awarded Attorney Fees* § 16.02[7] (1989).

18. We note that the district court specifically held that "Wooten failed to carry his initial burden of proof by the submission of a suffi-

ciently detailed application." However, the district court awarded compensation. It is not clear, in the context of the district court's opinion as a whole, what was meant by this statement. If Wooten, in fact, completely failed to carry his burden, no fees should have been awarded.

19. In some circumstances, a trustee or his attorney may provide sufficiently detailed and accurate information to establish that some fees and expenses are actual, necessary and reasonable but the applicant may fail to prove to the court that all his requested fees are warranted. In such cases, the court should only award compensation to the extent that it is proven to be actual, necessary and reasonable.

20. We have recognized that appellate courts also have expertise in determining the reasonableness of fees and expenses. *Matter of U.S. Golf Corp.*, 639 F.2d at 1206. However, we believe that the trial court, as a general rule, has a superior understanding of the matters presented in a fee application.

but fails to explain why compensation was awarded at the level it was given, it is difficult, if not impossible, for an appellate court to engage in meaningful review of a fee award. *See generally Matter of Texas Extrusion Corp.*, 836 F.2d 217, 220–21 (5th Cir.1988).

Judge Boe determined that Wooten's figures, based on reconstructed time records, were "essentially estimates" and had "less than full probative value." Moreover, Judge Boe determined that Wooten engaged in "consistent" and "systematic" overbilling. The court was also "concerned about the lack of certain reports" and expressed serious doubt as to whether Wooten's time records had any indicia of reliability. Judge Boe found that, in relation to some of the other cases with which Wooten's firm was involved, Wooten's claimed hours could not be "reasonably anticipated or believed."

In the face of these findings, both Judge Boe and the district court determined that fees should be awarded. Judge Boe found that "something needs to be paid back, even though in percentage terms it is a small amount." He then ordered Wooten as Trustee and his firm as Attorney for the Trustee to return $10,000 each to the estate. Judge Boe did not clearly explain whether he believed Wooten had met his burden of proof of submitting sufficiently detailed and accurate records for an independent assessment of actual, necessary and reasonable fees and he did not explain why compensation was justified at the level he awarded it. To a court reviewing this award, it appears that Judge Boe picked a number out of mid-air. The district court expressed concern about this aspect of Judge Boe's reasons, but then went on to arrive at a number that, in candor, suffers from the same defect. The district court determined that Judge Boe's $10,000 reduction in compensation was not "substantial"

enough, and then reduced the awards to the Trustee and Attorney for the Trustee by 50%—failing to explain how it arrived at this figure. We are wholly unable to make an assessment of the propriety of a fee award based on a number alone, devoid of any explanation of the method for its derivation. It may well be, as Continental asserts, that the fee applications, in conjunction with the hearing and the record in this case, provide an inadequate basis upon which to make an assessment of what fees are actual, necessary and reasonable. On the other hand, it may be that such an assessment can be and was made here, but neither the bankruptcy court nor the district court has provided an explanation of how its assessment was arrived at.

Recognizing the harsh result that obtains when fees are denied in their entirety, and in view of the fact that a remand is necessary to resolve the misrepresentation issue discussed above, we vacate the fee award and remand the issue of the amount of the fees to be granted to the bankruptcy court for a redetermination, consistent with the standards expressed in this opinion, of whether compensation should be awarded at all, and if so, in what amount. If it is determined that fees should be awarded, the court should clearly explain how it arrived at the level of compensation awarded.

VACATED and REMANDED.