In re J & J RECORD DISTRIBUTING CORPORATION, (Jointly Administered with Record Museum, Inc., A Pennsylvania Corporation, and Record Museum, Inc., A Delaware Corporation, and Record Museum, Inc., A New Jersey Corporation).

John P. JUDGE, Trustee,

v.

PINCUS, VERLIN, HAHN & REICH, P.C.

Civ. A. No. 87–8429.
Bankruptcy No. 80–03255K.
Adv. No. 87–0706.

United States District Court,
E.D. Pennsylvania.

March 24, 1988.

---

Alan Dubroff, Gary R. Kozik, Pincus, Verlin, Bluestein, Hahn & Reich, Philadelphia, Pa., pro se.

Edward J. Didonato, Ciardi, Fishbone & Didonato, Philadelphia, Pa., for John P. Judge, Trustee.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

This is an appeal from an Order of the Bankruptcy Court dated November 25, 1987 filed by the law firm of Pincus, Verlin, Hahn & Reich, P.C. ("the Pincus firm"), 80 B.R. 53. The appeal concerns an adversary proceeding brought by John P. Judge, as Trustee ("Trustee"), against the Pincus firm which acted as counsel for the debtor-in-possession, J & J Record Distributing Corporation ("J & J"), during the pendency of Chapter 11 proceedings. The Trustee was appointed shortly after the case was converted to a Chapter 7 proceeding on July 30, 1982.

In its Order, the Bankruptcy Court entered judgment in favor of the Trustee and against the Pincus firm in the amount of $8,500.00, the amount of interest which the Bankruptcy Court determined could reasonably have been earned on the monies deposited by the Pincus firm in non-interest bearing accounts during the Chapter 11 proceeding. In the Opinion accompanying the Order, the Bankruptcy Court found that pursuant to 11 U.S.C. § 345(a), a law firm representing a Chapter 11 debtor-in-possession has a duty to invest funds held by it in an interest-bearing account, and that the firm is liable for the interest it could have earned.

The Pincus firm asserts that section 345(a) does not create a duty to place proceeds from the debtor's estate in interest-bearing accounts or to otherwise insure that the assets of the estate will generate income.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a). *In re White Beauty View, Inc.*, 841 F.2d 524, 525–26 (3d Cir.1988); *In re Walsh Trucking Co.*, 838 F.2d 698, 701 (3d Cir.1988). By agreement of the parties, this dispute was submitted to the Bankruptcy Court based on a stipulation of facts. This Court must make an independent evaluation as to the question of law involved. *In re Gillen*, 69 B.R. 255 (E.D.Pa.1986).

The following facts were stipulated to by the parties:

1. On December 8, 1980, creditors of J & J Record Distributing Corporation, (Debtor), filed an involuntary petition against the debtor pursuant to Chapter 7, and said proceeding was thereafter converted on or about December 10, 1980 to a proceeding Chapter 11 of the Bankruptcy Code. [sic]

2. The law firm of Pincus, Verlin, Hahn & Reich, P.C., was appointed as counsel to the Debtor–In–Possession pursuant to an order issued on or about January 12, 1981.

3. The law firm of Pincus, Verlin, Hahn & Reich, P.C., on or about July 1, 1987, changed its name to Pincus, Verlin, Bluestein, Hahn & Reich, P.C.

4. On or about August 9, 1982, John P. Judge was appointed Trustee in the within proceeding, was duly qualified, and is so acting.

5. The Bankruptcy Court has jurisdiction over the within proceeding pursuant to one or more of the following: 28 U.S.C. Section 1334 and 11 U.S.C. § 542.

6. The Debtor filed an Accounting of Receipts and Disbursements, ("Accounting"), with the Bankruptcy Court for the Eastern District of Pennsylvania on November 21, 1983, [a copy of the Accounting was attached to the Stipulation as Exhibit "A"].

7. The Accounting reflects that counsel for the Debtor deposited One Hundred Eighteen Thousand One Hundred Twenty-Six Dollars and Fifteen Cents, ($118,126.15), in a checking account in Fidelity Bank on August 7, 1981, pending the determination, resolution, and payment of outstanding administrative claims.

8. The Accounting reflects that the debtor disbursed a total Nineteen Thousand Two Hundred Twenty-Five Dollars, ($19,225.00), to pay administrative claims after August 7, 1981.

9. The original deposit of One Hundred Eighteen Thousand One Hundred Twenty–Six Dollars and Fifteen Cents, ($118,126.15), remained in a non-interest bearing checking account from August, 1981 to September, 1982.

10. On or about September, 1982, counsel for the Debtor turned over the balance remaining in the account, approximately Ninety Nine Thousand One Hundred Fifty Seven Dollars and Sixty Four Cents, ($99,157.64), to the Trustee.

11. The accounting submitted by the Debtor's counsel reflects that the Debtor's counsel on or about July, 1981, placed One Hundred Fifty–One Thousand Dollars, ($151,000.00) in counsel for the Debtor's escrow account.

12. The counsel for the Debtor made disbursements from this account from July, 1981 through August, 1981 in the amount of Eighty One Thousand Four Hundred Ninety–Six Dollars and Sixty–

Three Cents ($81,496.63), leaving a balance of Sixty Nine Thousand Six Hundred Three Dollars and Thirty–Seven Cents, ($69,603.37), in said account.

13. Counsel for the Debtor made one additional disbursement of Three Thousand Five Hundred Dollars ($3,500.00).

14. Counsel for debtor turned over to the Trustee in November, 1982, the then existing balance in said account in the amount of Sixty Six Thousand One Hundred Three Dollars and Thirty–Seven Cents, ($66,103.37). From August, 1981 through November, 1982, the sum of Sixty–Nine Thousand Six Hundred Three Dollars and Thirty–Seven Cents ($69,-603.37) remained in a non-interest bearing account.

15. Counsel for the debtor is not in possession of any books and/or records to turn over to the Trustee which relate to the within transaction.

16. The Debtor's Accounting of Receipts and Disbursements, attached hereto as Exhibit "A", constitutes an accurate rendition of the facts surrounding the within transaction, and each and every fact therein is hereby incorporated by reference.

17. The interest paid by Philadelphia Banks for the period of July, 1981 through November, 1982 was five percent (5%) per annum. If said funds had been invested in an interest bearing account, the interest earned would have been Nine Thousand Nine Hundred Sixty–One Dollars ($9,961.00).

■ The stipulation of facts reflects that J & J was the debtor-in-possession during the pendancy of the Chapter 11 proceedings in the Bankruptcy Court. As the Supreme Court held in *Wolf v. Weinstein,* 372 U.S. 633, 649, 83 S.Ct. 969, 979, 10 L.Ed.2d 33 (1963), as long as the debtor remains in possession, "that corporation bears essentially the same fiduciary relationship to the creditor as does the trustee for the [d]ebtor out of possession." Therefore, as counsel for the debtor-in-possession, the Pincus firm was its agent and charged with the same fiduciary duty as the debtor-in-possession. Accordingly, the issue presented

to this Court is whether pursuant to section 345(a), counsel for a debtor-in-possession acting as a fiduciary in a Chapter 11 proceeding is required to deposit the funds of the debtor's estate in an interest-bearing account or to otherwise invest the funds of the debtor's estate in income-producing investments where it reasonably appears that a substantial sum of money may remain idle for a long period of time.

Section 345(a) of the Bankruptcy Code states:

A trustee in a case under this title *may* make such deposit or investment of the money of the estate for which such trustee serves as will yield the *maximum reasonable net return* on such money, taking into account the safety of such deposit or investment.

(emphasis added).

The Court's interpretation of section 345(a) must be guided primarily by the language of the statute, its legislative history, and the structure of the statute itself. As the Supreme Court stated in *United States v. Rodgers,* 461 U.S. 677, 706, 103 S.Ct. 2132, 2149, 76 L.Ed.2d 236 (1983):

The word "may" when used in a statute usually implies some degree of discretion. This common-sense principle of statutory construction is by no means invariable, however, and can be defeated by indications of legislative intent to the contrary or by obvious inferences from the structure of the statute.

(citations and footnotes omitted). The language of the statute clearly vests the discretion with the trustee. However, that discretion is limited by the words of the statute to the determination of whether the funds of the estate should be deposited in an interest-bearing account or otherwise used for income-producing investments so as to obtain the "maximum reasonable net return."

The legislative history reflects that in enacting section 345, Congress was primarily concerned with providing more flexible guidelines for the deposit or investment of the funds of the estate by the trustee. As such, section 345 is viewed as a significant departure from section 61 of the Bankrupt-

**368**

cy Act which limited the trustee to the deposit of the funds of the estate with banking institutions designated by the bankruptcy court, thereby restricting the rate of return available. The legislative history further reveals that: "[Section 345(a)] *permits* a trustee in a bankruptcy case to make such deposit [or] investment of the money of the estate for which he serves as will yield the *maximum reasonable net return* on the money, taking into account the safety of such deposit or investment." (emphasis added). S.Rep. No. 95–989, 95th Cong., 2d Sess. 44, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5830. *See also* H.Rep. No. 95–595, 95th Cong., 2d Sess. 333, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6289–90. As one commentator has stated:

> The Bankruptcy Code and Rule 5008 merely provide that the trustee *may* make such a deposit or such investments as will yield the *maximum* and places no affirmative duty on the trustee to make such investment or deposit. Whether or not such investment or deposit is made such as a deposit in a long-term high-yielding investment would *depend entirely on the circumstances in the particular case.* One should not forget that investment by the trustee is not the primary goal of the administration. Thus, while it is true that the trustee may invest estate funds in long-term maturity investments which produce a high yield, this practice is inconsistent with the proposition that the estate shall be administered promptly, expeditiously and monies shall be distributed to creditors with the least amount of delay.

(emphasis added). 6 W.J. Norton, Jr., Norton Bankruptcy Law and Practice Rule 5008, Editor's Comment (1983) at 321 (1987).

■ The language of section 345(a) does not create an affirmative duty on the part of the trustee to make such a deposit or investment as will yield the maximum return. However, the statute cannot be interpreted as permitting the trustee or other fiduciary to permit substantial sums of money to remain idle for a long time.

Prior to the enactment of the current Bankruptcy Code, the deposit of the funds of the debtor's estate were governed by sections 47(a) and 61 of the Bankruptcy Act. The legislative history of the 1963 amendments to section 47(a)(2) of the Bankruptcy Act, P.L. 88–16, 77 Stat. 14, is instructive with regard to the obligation of the trustee when the funds of the estate may remain idle for long periods of time:

> Section 47(a)(2) of the Bankruptcy Act requires a trustee in bankruptcy to deposit all money received by him in 'designated depositories.' Section 61 of the act provides that the courts of bankruptcy 'shall designate, by order, banking institutions as depositories for the money of estates. * * *'
>
> As a result of two early cases these provisions have been interpreted to require the trustee to deposit the money of a bankrupt's estate in demand deposit accounts. By this view he may not make deposits in interest-bearing accounts unless the creditors consent. See *Huttig Mfg. Co. v. Edwards,* 160 Fed. 619 (8th Cir.1908) and *In re Dayton Coal & Iron Co.,* 239 Fed. 737 (E.D.Tenn.1916).
>
> It has been brought to the attention of the committee that in cases where a substantial period of time elapses before the closing of the estate, *large sums of money may be held by the trustee for long periods of time without the realization of any interest on those funds.*
>
> *The committee believes that sound fiscal management requires that the funds of a bankrupt's estate shall not be idle for long periods of time but should earn interest under proper safeguards.* To this end, the bill provides that the court may authorize the trustee to deposit the money of a bankrupt's estate in interest-bearing accounts in 'designated depositories.' The security of such deposits is assured by section 61 of the Bankruptcy Act.

(emphasis added). S.Rep. No. 147 on H.R. 2849, 88th Cong., 1st sess. (1963), *reprinted in* U.S.Code Cong. & Admin.News 634, *reprinted in* 2A J.W. Moore, L.P. King, Collier on Bankruptcy ¶ 47.01[3] at 1740–41 (14th ed. 1978). *See also* 2A J.W. Moore,

L.P. King, Collier on Bankruptcy ¶ 47.09 at 1755–58 (14th ed. 1978).

■ Therefore, contrary to the appellant's contention, even prior to the enactment of the current Bankruptcy Code, the Bankruptcy Act required that the trustee deposit the funds of the estate so that they would not lie idle for long periods of time, but would earn interest under proper safeguards. Section 345(a) of the Bankruptcy Code makes it clear that the trustee or other fiduciary is no longer limited to the deposit of funds in banking institutions designated by the bankruptcy court, but since the enactment of the Code, the trustee may make deposits in savings and loan institutions, buy government bonds or make such other appropriate investments or deposits, allowing the trustee to secure a higher rate of return than under prior law. 2 L.P. King, Collier on Bankruptcy ¶ 345.02 at 345.11–345.12 (15th ed. 1987).

An interpretation of section 345(a) of the Code placing an obligation on the trustee or other fiduciary charged with the management of the funds of the estate to deposit or invest the funds in such a manner so as to earn interest or to produce income whenever it reasonably appears a substantial amount of funds may remain idle for a long period of time is also in keeping with the principles of the Restatement (Second) of Trusts § 181 comment c (1959):

> In the case of money, it is normally the duty of the trustee to invest it so that it will produce an income. The trustee is liable if he fails to invest trust funds which it is his duty to invest for a period which is under all the circumstances unreasonably long. If however, the delay is not unreasonable, he is not liable.
>
> If the trustee commits a breach of trust in neglecting within a reasonable time to invest the money, he is chargeable with the amount of income which normally would accrue from proper trust investments.

It is clear that although the trustee is not required under section 345(a) to invest the funds of the bankruptcy estate so as to obtain the maximum rate of return, the trustee is required to deposit the funds in interest-bearing accounts or to use the funds for an income-producing investment whenever it reasonably appears that a substantial amount of funds may remain idle for a long period of time.

■ Consequently, where, as in this case, a substantial amount of money (almost $200,000.00) was available for deposit in interest-bearing accounts or investment in income-producing investments, and was permitted by the fiduciary to stand idle for a period in excess of one year, it was clearly unreasonable and an abuse of discretion by the fiduciary. Under these circumstances, the Pincus firm is chargeable with the amount of interest which could have been earned on the funds.

Accordingly, the judgment of the Bankruptcy Court will be affirmed.