**In re William Herbert HUNT and Nancy Jane Broaddus Hunt, Debtors.**

**GARDERE & WYNNE, Plaintiff,**

v.

**Steven S. TUROFF, Liquidating Trustee of the WHH Liquidating Trust; United States of America (Internal Revenue Service), Defendant.**

Civ. A. No. 3–91–2395–X.

United States District Court,
N.D. Texas,
Dallas Division.

May 2, 1996.

Stephen McCortin, Dallas, TX, for plaintiff.

Grover Hartt, U.S. Dept. of Justice, Tax Div., Dallas, TX, for USA.

Gerald Smith, Lewis & Roca, Phoenix, AZ, for Steven Turoff.

## MEMORANDUM OPINION AND ORDER

KENDALL, District Judge.

Before the Court is an application for review of the bankruptcy judge's ruling regarding a final fee application of Plaintiff Gardere & Wynne as counsel for the debtors. Having considered the filed materials and the applicable law, the Court concludes that the bankruptcy judge's determination is contrary to law and clearly erroneous in part. For the reasons stated below, the decision of the bankruptcy court is **AFFIRMED in PART, REVERSED and RENDERED in PART** and **REVERSED and REMANDED in PART** for proceedings consistent with this opinion.

### Background

This case involves a dispute over the amount of attorney's fees to which the Plaintiff is entitled for its work as counsel for the debtors from the period of its approval by the bankruptcy court on November 17, 1988 to the final fee hearing on August 15, 1991. The debtors in this case are from the well-known Hunt family (William Herbert Hunt and Nancy Jane Broaddus Hunt), and their personal bankruptcy was one of the largest in the United States at the time of its filing. The debtors' cases were consolidated for administrative purposes. Prior to the filing of the bankruptcy proceeding, the debtors paid the Plaintiff a retainer of $200,000. This retainer was placed in a trust account, but was never placed in an interest-bearing account. The Plaintiff obtained an order from the bankruptcy court establishing a procedure for interim compensation from the bankruptcy estate income and asset proceeds. Under this order, Plaintiff prepared monthly motions requesting interim compensation for fees and expenses incurred during

the previous month. If no party objected within fifteen days from the date of service of the monthly motion, Plaintiff was entitled to receive from the debtors eighty percent (80%) of its fees and one hundred percent (100%) of its expenses for the applicable period. The remaining twenty percent (20%), referred to as the "holdback," accumulated for a four month period, and the bankruptcy court then reviewed and authorized payment on this holdback every four months at a formal interim fee application hearing. Plaintiff submitted four interim fee applications, a final fee application, and a supplemental final fee application.

On December 26, 1989, the bankruptcy court entered an order confirming a joint plan of reorganization. The joint plan had been proposed by the debtors, along with their largest creditors: 1) the IRS (a Defendant), 2) Manufacturers' Hanover Trust Company, 3) Minpeco S.A., and 4) George Truitt, as Trustee of Hunt International Resources Corporation. Certain assets were agreed to be retained by the debtors, and the remaining assets were transferred to a WHH Liquidating Trust, for sale and distribution of proceeds to creditors. On January 11, 1990, the bankruptcy court appointed Defendant Steven S. Turoff as Independent Trustee of the WHH Liquidating Trust. As Independent Trustee, Mr. Turoff was empowered to acquire all of the debtors' bankruptcy estate assets aside from certain assets retained by the debtors, and liquidate these assets as well as disburse the proceeds to creditors pursuant to a formula in the reorganization plan.

On August 15, 1991, the bankruptcy court entered its Findings of Fact and Conclusions of Law Regarding Final Fee Application of the Plaintiff. Plaintiff had requested total fees and expenses of $1,807,183.22. The bankruptcy court only allowed total fees and expenses of $1,305,113.83, thereby disallowing $502,069.39. The Plaintiffs appeal the denial of certain fees and expenses totaling $355,357.44 out of the $502,069.39 disallowed. The $355,357.44 is categorized for convenience of discussing the issues on appeal:

| | | |
|---|---|---|
| A. | Accrued unbilled expenses | 69,570.86 |
| B. | Benchmark Dispute | 68,372.89 |
| C. | Touche Ross Fee Dispute | 20,250.50 |
| D. | Interest on Retainer Account | 38,299.85 |
| E. | Services After April 30, 1990 | 109,337.84 |
| F. | Placid Bank Appeal | 14,525.50 |
| G. | Sanctions | 35,000.00 |
| | | $355,357.44 |

**Standard of Review**

The Court reviews all legal conclusions of the bankruptcy court on a *de novo* basis. *Southmark Corporation v. Grosz (In re Southmark Corp.)*, 49 F.3d 1111, 1114 (5th Cir.1995) citing *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1307 (5th Cir.1985). Factual conclusions of the bankruptcy court may only be set aside if they are clearly erroneous pursuant to Bankruptcy Rule 8013. The bankruptcy judge's ultimate award of attorney compensation is governed by an abuse of discretion standard. *Anderson v. Anderson (In re Anderson)*, 936 F.2d 199, 203 (5th Cir.1991) citing *Continental Illinois National Bank & Trust Co. v. Charles N. Wooten, Ltd. (In re Evangeline Refining Co.)*, 890 F.2d 1312, 1322 (5th Cir. 1989). An abuse of discretion arises where 1) the bankruptcy judge fails to apply the proper legal standard or follows improper procedures in determining the fee award, or 2) bases an award on findings of fact that are clearly erroneous. *Continental Illinois* at 1325. Thus, abuse of discretion entails both a *de novo* and a "clearly erroneous" standard of review. Each of the categories which are on appeal will be examined under these standards.

**Analysis**

*A. Accrued unbilled expenses*

On the issue of accrued unbilled expenses amounting to $69,570.86, Plaintiff contends that the Bankruptcy Court failed to grant its request for reimbursement of these unbilled expenses. The Plaintiff asserts that a "glitch" in its computerized accounting system caused almost all reproduction expenses, postage and long distance telephone charges from February of 1989 through December of 1989 to be excluded from its previous invoices submitted to the bankruptcy court. Plaintiff only provided a summary of the claimed amounts, and at no time provided any hard evidence such as computer printouts to the bankruptcy court. Plaintiff ar-

gues that Defendant's failure to object under the interim compensation plan is an acquiescence to the above fees. Even if Defendants acquiesced to the above fees, the bankruptcy court still bears the responsibility of determining the appropriateness of all compensation requested by debtor's counsel, whether or not objections are filed. *In re Temple Retirement Community, Inc.,* 97 B.R. 333, 336 (Bankr.W.D.Tex.1989). Plaintiff has the burden to persuade the court that fees and costs actually have been incurred and are necessary and appropriately compensable. *Continental Illinois,* 890 F.2d at 1325. The bankruptcy court ruled that Plaintiff failed to meets its burden. Under the standards of review set out above, this Court affirms the bankruptcy court's ruling on the accrued unbilled expenses. As stated by Judge King "the reviewing court should not venture guesses nor undertake extensive investigation to justify a fee for an attorney or trustee who has not done so himself. It is not an overly burdensome task to enlighten the court as to the work undertaken." *Id.* at 1326.

## B. Benchmark Dispute

The Benchmark dispute involved the valuation of a coin and antiquities collection which was to be liquidated by the WHH Liquidating Trust. To promote the sale of this collection, the debtors and creditors agreed in the reorganization plan to have the debtors assist in advertising the sale of the collection. For the debtor's assistance, the parties agreed that the debtors would receive sixty percent (60%) of any increased proceeds obtained at the sale in excess of a benchmark value. The reorganization plan provided that the debtors and the IRS would mutually determine the benchmark value. However, if no agreement could be reached, the court could determine its value. On November 9, 1990, the bankruptcy court determined the benchmark value.

█ The Plaintiff contends that the expenses relating to the benchmark value of the coin and antiquities collection were an integral part of the implementation of the reorganization plan. According to § 8.3 of this plan "Counsel for Debtors may continue representation to assist in implementing the terms of the Plan, the WHH Liquidating Trust and objections to claims." The bankruptcy court found that the $68,372.89 involved an interpretation rather than an implementation of the reorganization plan. Further, the bankruptcy court found these expenses were tied to the debtor's own unique interests rather than the estate's. This Court is required to examine these factual conclusions under the "clearly erroneous" standard. Based upon the bankruptcy court's opportunity to weigh all the factors in its consideration of expenses, and upon the record on appeal, the Court does not find that the factual conclusions regarding the benchmark dispute are clearly erroneous. Thus, it affirms the bankruptcy court's ruling disallowing these expenses.

## C. Touche Ross Dispute

During the time period that the debtors were in Chapter 11, an "Ad Hoc Committee" consisting of the largest creditors was authorized by the bankruptcy court to employ the accounting firm of Touche Ross to assist in a variety of matters. An employee of Touche Ross on his own initiative contacted Dean Ferguson, an associate of Plaintiff, providing Plaintiff with information regarding the Touche Ross Fee Application. This information consisted of two packets of documents which Plaintiff .claims aided the prosecution of the debtors' objection to the Touche Ross Fee Application. Certain of these documents could be considered protected under the attorney/client privilege because the accounting firm of Touche Ross had obtained legal counsel. The debtors and creditors at this time were adverse parties in their efforts to agree on a plan of reorganization. A week after an employee of Touche Ross leaked this information to Plaintiff, Plaintiff requested an in-chambers conference with the bankruptcy court and the members of the Ad Hoc Committee to relay what transpired. The following month counsel for Touche Ross deposed numerous attorneys of Plaintiff to ascertain the exact facts and circumstances surrounding this incident. On October 6, 1989 a hearing was held before the bankruptcy court, at which time Touche Ross and the

Plaintiff stipulated to an agreement in which Plaintiff would no longer participate in the objections to the accountant's fee application.

■ Plaintiff requests reimbursement of $20,250.50 incurred with regard to the hearings, depositions, research, negotiations and settlement embodied in the above stipulation surrounding the Touche Ross dispute. Plaintiff contends that its efforts in the Touche Ross dispute caused a reduction in the Touche Ross fees, resulting in a substantial saving to the estate. Whereas the Defendant, the IRS, argues that Plaintiff's actions did not result in the lowering of accountant's fees. Plaintiff suggests that the Touche Ross employee's disclosure was inadvertent whereas the Defendant suggests the disclosure was intentional.

The Bankruptcy Court denied Plaintiff's request for reimbursement finding that the $20,250.50 in fees comprised Plaintiff's representation of itself for ethical violations. Again, the bankruptcy judge's ruling involves a factual determination and is governed by the "clearly erroneous" standard. The Court does not find based upon the record before it and the arguments of counsel that this factual determination is clearly erroneous. Accordingly, the Court affirms the bankruptcy court's decision on the Touche Ross dispute.

### D. Interest on Retainer Account

■ As discussed earlier, the debtors paid Plaintiffs a retainer of $200,000, which was held by Plaintiff in a non-interest bearing trust account. Plaintiff recognized that the retainer was property of the bankruptcy estate, to be held in trust for the estate. *In re Crimson Investments N.V.*, 109 B.R. 397, 402 (Bankr.D.Ariz.1989). Plaintiff at no time prior to filing of the final fee application informed the court that it did not deposit the money in an interest-bearing account.

The Bankruptcy Court ruled that the WHH Liquidating Trust was deprived of the accrued interest during the time that the retainer was held in the Retainer Account, and required Plaintiff to reimburse the WHH Liquidating Trust for $38,299.85 in lost interest income. The bankruptcy judge based his ruling on *In re Crimson Investments, N.V.*

The *Crimson Investments* case holds that a retainer is property of a debtor's estate and should be held in trust for the estate. This holding is very similar to Rule 1.14(a) of the Texas Disciplinary Rules of Professional Conduct requiring that retainers be held in trust.

Plaintiff argues that it failed to find a published opinion by the presiding bankruptcy court judge explicitly requiring that a retainer be placed in an interest-bearing account. Defendant Trustee focuses on *Judge v. Pincus, Verlin, Hahn & Reich (In re J & J Record Distributing Corp.)*, 84 B.R. 364, 369 (Bankr.E.D.Pa.1988) which interprets Bankruptcy Code Section 345 as placing an obligation on the trustee or other fiduciary charged with the management of the funds of the estate to deposit or invest the funds in such a manner so as to earn interest or produce income whenever it appears that substantial sums of money will remain idle for a long time.

■ The bankruptcy judge's decision was based on legal conclusions, and this Court is required to review such conclusions *de novo*. Under this standard, this Court must analyze the law and the applicable facts anew. This Court finds the bankruptcy court's ruling on the reimbursement of the retainer account is not based on any clear authority. While *Crimson Investments* and Rule 1.14(a) do require a retainer to be held in trust for the estate, neither requires the retainer account to be placed in an interest-bearing account. Section 345 of Chapter 11 of the U.S.C. states:

> A trustee in a case under this title *may* make such deposit or investment of the money of the estate for which such trustee serves as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment.

The Fifth Circuit has stated that the language of section 345 clearly vests the discretion of whether and how to invest certain funds with the trustee. *E.F. Hutton Southwest Properties II, Ltd. v. Union Planters Nat'l Bank (In re E.F. Hutton Southwest Properties II, Ltd.)*, 953 F.2d 963, 974 (5th Cir.1992) citing *Judge v. Pincus, Verlin,*

*Hahn & Reich (In re J & J Record Distributing Corp.),* 84 B.R. 364, 369 (Bankr. E.D.Pa.1988). The Fifth Circuit also cited an Ohio case which held that section 345(a) is permissive and does not require the trustee to invest estate funds. *Id.* citing *United States ex rel. The Peoples Banking Co. v. Derryberry (In re Peckinpaugh),* 50 B.R. 865, 868 (Bankr.N.D.Ohio 1985). While *J & J Record Distributing Corp.* has been cited for the proposition that investing estate funds lies within the discretion of the trustee, this Court is not bound by its additional holding that the trustee must place funds in an interest-bearing account. The Court finds the Ohio case which holds that section 345(a) is permissive to be more persuasive. This ruling is primarily based upon the clear language of the statute and the use of the word *may.* Accordingly, since the authority relied upon by the bankruptcy court is not controlling in this jurisdiction, this Court reverses the bankruptcy judge's ruling requiring the interest of $38,299.85 on the retainer to be reimbursed to the estate. Plaintiff was not required to place the funds in an interest-bearing account and therefore is entitled to the $38,299.85 it was required to reimburse to the estate.

### E. Services After April 30, 1990

 Plaintiff requests that $109,337.84 of expenses and costs be reimbursed for services after April 30, 1990. The bankruptcy court ruled that no award for any of these fees would be permitted because of 1) rampant lumping of time by Plaintiff and 2) Plaintiff's failure to comply with steps for appropriate application to the court for employment. Plaintiff contends that the bankruptcy court's order of April 30, 1990 suspending all counsel except counsel for the Trustee was unclear. Stephen A. McCartin, the other appointed counsel for debtors, along with Munsch and Belanger of the law firm of Decker, Hardt, Kopf, Harr, Munsch & Dinan representing Nelson Bunker Hunt, requested a clarification conference on the court's order of April 30th. At the clarification conference on May 18, 1990 the bankruptcy judge presented the following order:

ORDERED, ADJUDGED AND DECREED that the employment of Gardere & Wynne as attorneys for the Debtor–In–Possession is terminated as of April 30, 1990 and no fees or expenses will be chargeable to Trust or the Estate *unless expressly requested and authorized by Liquidating Trustee or* authorized in advance of performance on application to this Court and after notice and hearing. (emphasis added).

Plaintiff argues that the bankruptcy court mistakenly concluded that it was not entitled to perform services at the request of the WHH Liquidating Trust. Defendant, the Independent Trustee, suggests that Plaintiff provided the bankruptcy court, as well as the Trustee, a general compilation of all time spent on the case. After sifting through this compilation, the Defendant came to the conclusion that a majority of Plaintiff's time dealt with unrelated and unauthorized matters, such as the nonproductive interests, benchmark, and Vail Home litigation. However, the Defendant at a hearing of the final fee application informed the bankruptcy court that as Trustee he did not object to $39,917.50 of these fees because they dealt with "general bankruptcy" matters involving transfer documentation between Plaintiff and Trustee's counsel, Lewis and Roca, as well as documentation on a joint motion with Trustee's counsel. The Defendant Trustee even agrees that the bankruptcy court may have mistakenly overlooked its ruling at the clarification conference by concluding that Plaintiff was not authorized to perform services at the request of the WHH Liquidating Trust or its counsel without further court authorization.

After reviewing the denial of fees after April 30, 1990, this Court finds that the bankruptcy court's ruling on Plaintiff's failure to obtain a court order before undertaking additional asset transfer documentation work at the trust's request is "clearly erroneous." The bankruptcy court itself issued an order on May 18, 1990 which allowed Plaintiff to do further work at the request and authorization of the Liquidating Trustee. Yet, the "rampant lumping" of time by Plaintiff in its request for reimbursement is a factual conclusion drawn by the bankruptcy court, and this Court fails to find such conclusion to be

clearly erroneous. Thus, the bankruptcy judge's ruling is in part clearly erroneous. Accordingly, the Court remands this issue to the bankruptcy court for a determination of an appropriate fee for services, expenses and costs provided by the Plaintiff after April 30, 1990. Since the "lumping" by the Plaintiff caused this further determination to be necessary, it would only be fair for the Plaintiff to pay the reasonable and necessary fees associated with that exercise.

### F. Placid Bank Appeal

The Placid Bank Appeal involves the Placid Oil Company as a creditor which held contingent guaranty claims against the debtor's estate. Placid maintained that its claims should "ride through" the bankruptcy proceedings and be payable by the debtors. Thus, Placid's claims would be treated as nondischargeable. On December 28, 1989, Placid filed an appeal on the reorganization plan which was confirmed two days earlier. Plaintiff requests $14,525.50 for its services in connection with filing a brief defending the reorganization plan from appeal.

The bankruptcy court denied any reimbursement of the fees relating to the Placid Banks Appeal because the services performed by the Plaintiff were really for the debtor's benefit without affecting the creditors or the WHH Liquidating Trust. Plaintiff contends that briefing on this appeal was well underway before counsel of the Liquidating Trustee was appointed. Further, Plaintiff stresses that it was instrumental in helping Trustee's counsel file a brief on behalf of the Liquidating Trustee. Defendant Trustee admitted that Plaintiff did provide some benefit to the estate and trust with its background and additional "slant" on the appeal. Defendant Trustee contends that a majority of Plaintiff's services were duplicative but that one-fourth (¼) of the fees could be considered a contribution to the estate, valued at $3,631.37.

■ The Placid Banks Appeal is primarily a factual issue with some legal matters intertwined. The majority view is that attorneys are not entitled to compensation from the funds of the bankruptcy estate unless those services benefit the estate. *In re Gra-*

*bill Corp.,* 110 B.R. 356, 359 (Bankr.N.D.Ill. 1990) (citing a long list of cases supporting this general rule). "The clear weight of authority supports the proposition that reasonable compensation under § 330(a)(1) for actual, necessary services means services that benefit the debtor's estate, not the debtor." *Stewart v. Law Offices of Dennis Olson,* 93 B.R. 91 (N.D.Tex.1988); *see also, Soteres v. Scroggins (In re Orbit Liquor Store),* 439 F.2d 1351, 1354 (5th Cir.1971) (stating that "legal services designed to benefit the bankrupt personally may not be compensable out of the estate."). When the services of a debtor's attorney duplicate the duties of the trustee and the attorney for the trustee, or are designed to benefit the debtor personally, they are not compensable out of the estate. *See In re Bennett,* 133 B.R. 374 (N.D.Texas 1991) citing *Soteres v. Scroggins (In re Orbit Liquor Store),* 439 F.2d 1351 (5th Cir.1971).

■ The bankruptcy court's finding that expenses related to the Placid Bank Appeal only benefited the debtor and not the estate is clearly erroneous, especially, in light of an admission by the Trustee that Plaintiff's services benefited the estate. Thus, the Court reverses the bankruptcy court's determination on the Placid Bank Appeal. On remand, the bankruptcy court should determine the proper amount of the fees which are attributable to the Placid Bank Appeal which benefitted the estate.

### G. Sanctions

■ The bankruptcy court sanctioned Plaintiff for $35,000 for its violations of the bankruptcy court's orders. The sanctions were in part based upon work done by the Plaintiff after April 30, 1990 without the express permission of the presiding bankruptcy judge. The Court has previously remanded the issue of fees incurred after April 30, 1990 for reconsideration by the bankruptcy court. Since the $35,000 in sanctions was in part based upon the bankruptcy court's finding that the Plaintiff disobeyed its orders by performing work after April 30, 1990 without its express permission, the Court also remands the sanctions issue. On remand the bankruptcy court should provide the parties with notice and an opportunity to be heard

on the issue of sanctions. In light of this Court's finding that the Plaintiff did not disobey the Court's orders by performing work after April 30, 1990, the bankruptcy court should decide what portion of the sanctions was imposed to punish that perceived disobedience.

## Conclusion

For the reasons set forth herein, the determinations of the bankruptcy court regarding the unbilled expenses, the benchmark dispute and the Touche Ross dispute are **AFFIRMED**.

The determination by the bankruptcy court requiring the Plaintiff to reimburse the estate for interest on the retainer account is **REVERSED and RENDERED.** The Plaintiff was not required to place the funds in an interest-bearing account and is entitled to return of the $38,299.85.

The rulings of the bankruptcy court with regard to the amount of fees incurred after April 30, 1990, the Placid Bank appeal and the sanctions are **REVERSED and REMANDED** for proceedings consistent with this opinion.

**SO ORDERED.**